IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| ANDRE TODD WATSON, § | | |
| TDCJ-ID # 1048060, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| § | | |
| v. § | | CIVIL ACTION V-02-0074 |
| § | | |
| RICK DOSS, et al., § | | |
| § | | |
| Defendants. § | | |

### MEMORANDUM OPINION AND ORDER

Andre Todd Watson, a former inmate of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a civil rights complaint against TDCJ-CID officials and health care workers alleging that his constitutional rights were violated. After reviewing the pleadings along with records and a report from the Texas Attorney General's Office, this court has determined that this action should be dismissed as frivolous. 28 U.S.C. § 1915.

### I. Procedural History and Claims

Watson originally filed a vaguely worded civil rights complaint in the United States District Court for the Northern District of Texas. After some difficulty in obtaining an amended complaint, the Northern District Court determined that the action should be transferred to the Victoria Division of the United States Court for the Southern District Court because Watson complained of treatment while he was assigned to the TDCJ-CID Stevenson Unit which is located within that Division. *See* Docket Entry No. 43.

Upon receiving the complaint in the Victoria Division, this court ordered Watson to submit a more definite statement regarding his claims. Docket Entry No. 45. Watson responded by submitting a "Complaint" (Docket Entry No. 47) in which he set forth a muddled series of narratives. After liberally construing the statements, the court determined that Watson asserted four claims which are set forth as follows:

1. In his first claim Watson argues that he was not adequately protected from assault by other prisoners. He alleges that Inmate Trevenio Johnson attacked him on August 22, 2002. Johnson supposedly struck Watson on the left side of his head. Watson wrote a letter to the DeWitt County Sheriff, the late Clifton Foulds, Jr., complaining about the incident.

2. Watson claims that Captain Ricky Doss and Lieutenant Tonia Perry retaliated against him for filing grievances and a suit concerning mail that was allegedly withheld by subjecting him to false disciplinary charges.

3. Watson alleges that the Medical Department retaliated against him for reporting that Dr. Sehorn had been intoxicated by denying him medication for his blood pressure and by improperly removing work restrictions.

4. Watson was wrongly assigned to the TDCJ-ID Jester IV Psychiatric Unit.

## II. The Attorney General's Records

While Watson's allegations are unorganized, disjointed, and occasionally delusional, they indicate that he believes that he is being persecuted by various officials and is subjected to conditions that put his health at risk. Watson's pleadings may be evidence that he is mentally disturbed, but the court finds that it is necessary to investigate the facts behind his claims. *See McArdle v. Tronetti*, 769 F.Supp. 188, 189 (W.D. Pa. 1991) ("Conventional wisdom provides that 'just because you are

paranoid, it doesn't mean that they aren't out to get you.'"). Consequently, the court ordered the Attorney General to file a report pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Accordingly, the Attorney General has submitted a report (Docket Entry No. 56) with the following records:

Exhibit A:  Watson's Classification and Disciplinary File which reflects that Watson has not been assigned to or housed in the Jester IV Unit since he was received at TDCJ-CID on July 17, 2001.

Exhibit B:  The Criminal Case File regarding Trevino's assault on Watson which indicates that Watson did not suffer any injuries.

Exhibit C:  Watson's Administrative Investigation File which includes a Complaint Withdrawal Request, signed by Watson, indicating that he had no complaint against Captain Doss as well as other TDCJ-CID officials.

Exhibit D:  Watson's University of Texas Medical Branch Records relating to surgical repair of Watson's hand.

Exhibit E:  Watson's Health Records.

Exhibit F:  Watson's Offender Grievance Records.

### III. Analysis of the Allegations in Light of the Records

The court will determine if there is any basis to Watson's conclusory and often muddled allegations by reviewing the records to see if there are any facts which substantiate them or even indicate that there is any support for them.

A. Trevenio Johnson's Assault

3

With regard to Watson's first allegation, there is a report (Exhibit B) which reflects that Watson did complain to prison officials that Johnson assaulted him by striking him in the face and had threatened to kill him on August 22, 2002. The purported reason for the assault was that Watson had informed on Johnson the previous day. *Id*. at 6.

A Life Endangerment Investigation followed in which there was no evidence found to support that the alleged assault occurred. *Id*. at 3. The investigation also revealed that there had been no prior requests for protection nor had there been any similar incidents. *Id* at 10, Offender Investigation Form: Investigation Details at 2. Johnson denied ever having assaulted Watson, and there were no eye-witness accounts to substantiate that an assault ever occurred. Moreover, the medical department found no visible signs that Watson had been struck in the face or that he suffered any injuries. *Id* at 12, 15, 18. Watson was transferred to the Darrington Unit on October 17, 2002. *Id*. at 4.

To establish a failure to protect claim under section 1983, a prisoner must show that he was incarcerated under conditions posing a substantial risk of serious harm and that the defendants were deliberately indifferent to his need for protection. *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995), *citing Farmer v. Brennan*, 114 S.Ct. 1970, 1977 (1994). An absence of any evidence indicating that the prisoner suffered any harm generally bars such claims. *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). The uncontroverted records show that Watson did not sustain any physical injuries. His unsubstantiated fears are not actionable. *See Babcock v. White*, 102 F.3d 267, 271-72 (7th Cir. 1996). Moreover, Watson cannot establish a claim due to a total lack of evidence indicating that any prison officials were clearly aware that Johnson made any threats against him. *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). The failure to protect claim is subject to dismissal because there are no facts which show that any prison official willfully ignored a threat to Watson's physical well being. *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986).

B. <u>Retaliation - Disciplinary Action</u>

The records pertaining to Watson's disciplinary retaliation claim consist of investigative reports (Exhibit C) made in response to Watson's grievances in which he alleged that he was subjected to harassment and retaliation by Warden Brenda Chaney, Captain Ricky Doss, and Grievance Coordinator Crystal Irvin while he was at the Stevenson Unit. Watson stated that he had filed a lawsuit against Captain Doss and Lieutenant Tonia Perry during a prior assignment at the Stevenson Unit. *See* Adminstrative Closure Request, Exhibit C at 2. He requested a transfer to another unit because of the alleged pending suit; however, the request was denied. *Id*.

Watson was charged with threatening to inflict harm on an officer on March 6, 2002. *Id.* at 2, 6. Captain Doss presided at the disciplinary hearing and found Watson guilty of the charge. Captain Doss's determination was supported by witness testimony that Watson did not want to go to a class because he was having difficulty with some other prisoners and a teacher. *Id*. at 7. There was also testimony that Watson warned the witness that he might harm the teacher if he was forced to go to class. *Id*. Watson was punished with a reduction in prisoner classification along with a loss of recreation and commissary privileges for 45 days. He was also placed on cell restriction for that same period and spent ten days in solitary confinement.

"'To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.'" *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003), *quoting Jones*, 188 F.3d at 324-25. To establish causation, the plaintiff must demonstrate that "'but for the retaliatory motive the complained of incident . . . would not have occurred.'" *MacDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998), *quoting Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1997).

5

Prisoners have a right to complain to the courts about a prison official's misconduct, and they cannot be disciplined for exercising that right. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). However, the courts are wary whenever such claims are presented because there is a potential for exploitation by prisoners who have been disciplined for real infractions of the prison rules. *Id.* at 1166; *see also Colon v. Coughlin*, 58 F.3d 865, 872 (2nd Cir. 1995) (prisoners' claims of retaliation are viewed with caution and skepticism because such claims may be fabricated with ease). A prisoner claiming that an official has retaliated against him must show more than the fact that he was disciplined after he had filed a suit or grievance against the official. *Enlow v. Tishomingo County, Miss.*, 45 F.3d 885, 889 (5th Cir. 1995). He must show that he would not have been disciplined if he had not filed the suit or grievance. *Woods*, at 1166.

In this action, the records show that Watson was disciplined after receiving a fair hearing with written notice and an opportunity to answer the charges. In light of the fact that there was evidence to support the disciplinary action, there is no clear indication that Captain Doss violated Watson's rights by finding him guilty and punishing him. *See Wolff v. McDonnell*, 94 S.Ct. 2963 (1974); *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994). While the disciplinary records do not serve as an absolute bar against Watson's retaliation claim, they do weigh heavily against it. *Woods*, at 1166. The most definitive record against the retaliation claim, however, is Watson's written statement in which he requested a withdrawal of his administrative complaint against Captain Doss, Warden Chaney, and Crystal Irvin. Exhibit C, page 19 (last page). In submitting the waiver of his complaint, Watson stated "I do not foresee any problems with these subjects." *Id.* Moreover, Watson stated to an investigator that he had no problems with Captain Doss or Warden Chaney and could not remember why he had filed a grievance against Irvin. Exhibit C, at 2, 18. The record contains no reference to

6

Lieutenant Perry and there is no suggestion that she was in any way involved in the disciplinary action taken against Watson.

There is nothing to indicate that the disciplinary action taken against Watson was motivated by any intent to retaliate against him. Without such an indication, his claim must fail. *MacDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). In addition, Watson's allegation against Perry is wholly unsupportable because there are no facts which show Perry's personal involvement in the alleged retaliatory actions taken against Watson. *Anderson v. Pasadena Independent School Dist.*, 184 F.3d 439, 443 (5th Cir. 1999). Consequently, Watson's retaliation claims are subject to dismissal because they are legally baseless.

### C. Retaliation - Medical Care

Watson alleges that he was denied blood pressure medication and lost work restrictions in retaliation for reporting that Dr. Sehorn was intoxicated. Watson's medical records (Exhibits D and E) reflect that he received extensive medical treatment while he was incarcerated. Watson's vast grievance records (Exhibit F) contain numerous complaints of transgressions, real or imagined. Most of the grievances concern how the mail has been handled. There are grievances alleging that mail is not being delivered. There are grievances against officers for not checking prisoner ID's when mail is delivered. There is a grievance that an officer was eating pizza and drinking a soft drink while distributing the mail. In essence, Watson has exhibited an obsession with mail handling policies. However, he has not ignored other perceived problems. There are grievances concerning Watson's placement in education programs. There are grievances about searches. There are grievances concerning access to the law library.

There is a grievance relating to Dr. Sehorn in which Watson alleges that the doctor was under the influence of some medication. He then complains that Dr. Sehorn removed a work restriction

prohibiting him from doing any labor which required him to reach over his shoulder. He also complained that he was suffering from high blood pressure and was experiencing dizziness. An investigation revealed that a nurse at another prison unit had removed the work restriction several months earlier because there was no history of a shoulder injury which would indicate that there was a need for that restriction. Later it was determined that Watson himself had requested a removal of the restriction. A medical examination was conducted after the grievance was filed which determined that Watson did not have high blood pressure.

Watson's medical records show that he was given adequate medical treatment throughout his incarceration. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). There is no indication that his need for medical care was ever denied in violation of his constitutional rights. *Estelle v. Gamble*, 97 S.Ct. 285, 292 (1976). If Dr. Sehorn or some other health care worker determined that a medication or job restriction should be withdrawn or modified after examining Watson's records, Watson could not establish a viable constitutional claim in light of the attention given to him. *Stewart v. Murphy*, 174 F.3d 530 (5th Cir. 1999). Watson's disagreement with Dr. Sehorn's assessment does not support a claim that his constitutional rights were violated. *Banuelos*, 41 F.3d at 235, *citing Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

Apart from the lack of evidence that Dr. Sehorn knowingly denied Watson medical attention, there are no facts which show that he was aware that Watson had filed a complaint against him and had taken action accordingly. Without such facts Watson cannot establish that Dr. Sehorn retaliated against him. *Woods*, 60 F.3d at 1166. Consequently, Watson's retaliation claim against Dr. Sehorn is subject to dismissal because it is baseless.

D. Assignment to Jester IV

8

With regard to Watson's complaint that he was wrongfully assigned to the Jester IV Unit, the records (Exhibit A) demonstrate that Watson has been incarcerated in the Stevenson Unit, the Hughes Unit, the Clements Unit, the Middleton Unit, the Darrington Unit, the Byrd Unit, the Dalhart Unit, and the Huntsville Unit since he was returned to TDCJ-CID on July 17, 2001, from a mandatory supervision release based on a new conviction in Dallas County. There is no indication that Watson was assigned or transferred to the Jester IV Unit during that period. Watson had been previously released to mandatory supervision on March 5, 1999.

There is an entry in Watson's TDCJ-CID Case Summary (Exhibit A, Pages 44-47) which reflects that he was assigned to the Jester IV Unit during his prior period of incarceration in the Texas prison system. The Case Summary indicates that Watson was assigned to Jester IV Unit from November 7, 1996, until December 13, 1996, because there was an urgent need for psychiatric treatment.

It is generally established that prison administrators have the authority and discretion to transfer prison inmates to specific units when they believe such assignments are necessary and appropriate. *Olim v. Wakinekona*, 103 S.Ct. 1741, 1748 (1983); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). Moreover, a prisoner cannot challenge a discretionary administrative decision regarding his treatment where it has been fairly determined that he has a psychiatric problem. *See Washington v. Harper*, 110 S.Ct. 1028 (1990); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992). Watson's records indicate that he has suffered from some mental malady and his own pleadings support this finding. There is no support to Watson's complaint that he was sent to Jester IV in error or in violation of his constitutional rights.

Apart from the absence of any indication that Watson's assignment to Jester IV was wrongful, his claim should be barred because the assignment occurred more than two years before the complaint

9

was filed on October 16, 2001, the date the original pleading was signed. In a section 1983 action, the court looks to the forum state's personal-injury limitations period. *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998), *citing Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994). In Texas, the statute of limitations period is two years after the date on which the cause of action arose. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). Watson was clearly aware of the alleged wrong when he was transferred to Jester IV in 1996. *See Holmes v. Texas A&M University*, 145 F.3d 681, 684 (5th Cir. 1998). Therefore, his claim regarding the assignment is subject to dismissal because it is untimely. *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990).

Watson is proceeding as a pauper and his action is subject to dismissal if the claims are frivolous. 28 U.S.C. § 1915(e). This action is **DISMISSED** as frivolous because the claims are wholly insupportable.

### IV. Conclusion

The court **ORDERS** the following:

1. This civil rights complaint filed by Andre Watson, TDCJ # 1048060, is **DISMISSED** as frivolous. 28 U.S.C. § 1915(e)(2).

2. The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties and the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159;Betty Parker, United States District Court, Eastern District of Texas, Tyler Division, 2ll West Ferguson, Tyler, Texas 75702.

**SIGNED** on this 28th day of July, 2005.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE